CASE NO. 22-3182

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| Edina Harsay, | ) |
| *Plaintiff – Appellant,* | ) |
| | ) |
| vs. | ) |
| | ) |
| Marla Luckert, et al., | ) |
| *Defendants – Appellees.* | ) |

On Appeal from the United States District Court
For the District of Kansas
Honorable Eric F. Melgren, District Judge
District Court Case No. 5:21-21-cv-04080-EFM-ADM

## APPELLANT'S OPENING BRIEF

Respectfully submitted,

Edina Harsay, Ph.D.
Plaintiff-Appellant, *pro se*
1100 Stone Meadows Dr.
Lawrence, Kansas  66049
Tel.: (785) 813-1757
Email: eharsay@icloud.com

Oral Argument is not requested

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.......................................................................... iii

PRIOR OR RELATED APPEALS .............................................................. 1

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE .................................................................... 2

STATEMENT OF THE FACTS .................................................................. 6

SUMMARY OF THE ARGUMENTS ......................................................... 15

WHETHER THE DISTRICT COURT ERRED BY APPLYING THE *ROOKER-FELDMAN*
DOCTRINE TO THIS CASE ...................................................................... 18

WHETHER THE DISTRICT COURT ERRED BY USING THE WORDING OF
42 U.S.C. § 1983 TO JUSTIFY DISMISSAL OF THE CASE ...................................... 22

WHETHER THE DISTRICT COURT ERRED BY NEGLECTING TO ACKNOWLEDGE
AND CONSIDER THE ALTERNATIVE AUTHORITIES TO U.S.C. § 1983 UNDER
WHICH DECLARATORY OR INJUNCTIVE RELIEF WERE SOUGHT IN BOTH THE
ORIGINAL COMPLAINT AND THE PROPOSED AMENDED COMPLAINT .............. 26

CONCLUSION ....................................................................................... 29

CERTIFICATE OF COMPLIANCE ........................................................... 30

CERTIFICATE OF SERVICE .................................................................... 30

– i –

ATTACHMENTS

*Harsay v. Luckert, et al.*, 5:21-21-cv-04080,
   Judgement (ROA p. 277, Doc. 27) ...................................................... 1

*Harsay v. Luckert, et al.*, 5:21-21-cv-04080,
   Memorandum and Order (ROA p. 269, Doc. 26) ............................. 2

*Harsay v. Luckert, et al.*, 5:21-21-cv-04080,
   Report and Recommendation (ROA p. 237, Doc. 20) ........................ 3

# TABLE OF AUTHORITIES

CASES

*Agrawal v. Ogden*, No. 18-6054 (10th Cir. Nov. 28, 2018) ....................18

*Campbell v. City of Spencer*, 682 F.3d 1278 (10th Cir. 2012) ...............19

*Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462 (1983) .............19

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ... 8

*Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007) ....................................... 27

*Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486 (D. Md. 2015) ............... 28

*Mo's Express, LLC v. Sopkin*, 44 F.3d 1229 (10th Cir. 2006) ................ 8

*Pittsburg City Rural Water Dist. v. McAlester*, 358 F.3d 694
   (10th Cir. 2004) .....................................................................................19

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ................... 24

Statutes

28 U.S.C. § 1331 ........................................................................... 1

28 U.S.C. § 1291 ........................................................................... 1

42 U.S.C. § 1983 ................................. 2, 15, 16, 17, 22, 23, 24, 26, 27, 29

K.S.A. § 77-601 et seq. ........................................................... 4, 13

K.S.A. § 60.518 ........................................................................ 5, 13

28 U.S.C. § 2201 ....................................................................... 7, 22, 28

28 U.S.C. § 2202 ......................................................................7, 22,28

Constitutional Provisions

U.S. Const. amend. XIV, § 1 ............................................. 1, 16, 17, 22, 26,27,28

PRIOR OR RELATED APPEALS

None.

STATEMENT OF JURISDICTION

### *Basis for the District Court's Jurisdiction*

This case raised federal claims under the Equal Protection Clause and the Due Process Clause of Section 1 of the Fourteenth Amendment of the U.S. Constitution. The District Court therefore had jurisdiction to hear this case under 28 U.S.C. § 1331.

### *Basis for the Court of Appeal's Jurisdiction*

The Tenth Circuit Court of Appeals has jurisdiction over this action pursuant to 28 U.S.C. § 1291.

### *Filing Dates and Final Appealable Order*

A *Judgment* for this case was entered on the docket on August 16, 2022 (ROA p. 277; Doc. 27; Attachment 1), pursuant to a *Memorandum and Order* filed on August 16, 2022 (ROA p. 269; Doc. 26; Attachment 2). The *Notice of Appeal* was timely filed on September 15, 2022 (ROA p. 278; Doc. 28). Two motions to extend the time for filing this brief were granted by this Court.

– 1 –

## STATEMENT OF THE ISSUES

***Issue 1***: Whether the District Court erred by applying the *Rooker-Feldman* doctrine to this case.

***Issue 2:*** Whether the District Court erred by using the wording of 42 U.S.C. § 1983 to justify dismissal of the case.

***Issue 3***: Whether the District Court erred by neglecting to acknowledge and consider the alternative authorities to U.S.C. § 1983 under which declaratory or injunctive relief were sought in both the original *Complaint* and the proposed *Amended Complaint*.

## STATEMENT OF THE CASE

I commenced this action on November 10, 2021 by filing a *Complaint* for declaratory and injunctive relief in the United States District Court for the District of Kansas (ROA p. 7). The named defendants for this case are the current justices of the Kansas Supreme Court in their official capacities, with the exception of Justice Stegall, who had recused himself from the case that led to my *Complaint*. Three justices

who had participated in that case, including the sole Justice who signed the Opinion in the case, are now retired (Justices Carol Beier, Lawton Nuss, and Lee Johnson), and thus I have named their replacements, in their official capacities, as Defendants. The terms "Defendants" and "Appellees" refer to the "Justices of the Kansas Supreme Court" in a general sense, because it is the current Kansas Supreme Court that is capable of providing a remedy in this case. For this reason, the Kansas Supreme Court is also listed as a defendant/appellee.

The Kansas Supreme Court filed an opinion on Nov. 21, 2018, which concerned a petition for judicial review that I brought against the University of Kansas ("University") (ROA p. 72, Exhibit 1, Appendix A for Doc. 1). The Kansas Court of Appeals had ruled in my favor in the case (ROA p. 96; Doc. 1, Exhibit 1, Appendix B), but the Kansas Supreme Court overturned that decision. I timely filed a *Motion for Rehearing or Modification* (ROA p. 123; Doc1, Exhibit 2), and the Kansas Supreme Court denied my motion on Feb. 28, 2019, which was its final decision in my case (ROA p. 119; Exhibit 1, Appendix C for Doc. 1). I subsequently filed a *Petition for Writ of Certiorari* to the Supreme Court of the United States, in which I sought to overturn the Feb. 28, 2019 decision. That case is necessarily different from the current one, as

I can no longer challenge the judgment of the Kansas Supreme Court in my case. I did not challenge that judgment in either my *Complaint* or proposed *Amended Complaint*.

This case in not about the judgment of the Kansas Supreme Court, nor is it about any harm caused by that judgment. However, I included my *Writ of Certiorari* in filings for this case (ROA p. 25; Doc 1, Exhibit 1), because it contains concise summaries of the most critical facts relevant to this case, and because it gives meticulous and precise citations to the record that was under review at all stages of the judicial review case, as well as precise citations to contents of court filings (which may be judicially noticed).

My factual statements in my filings were not refuted either by the courts or by the University, but most of my critical factual statements, as well as critical legal arguments, were omitted from the Appellees' *Opinion* that is the focus of this case. Thus, the *Opinion* does not fairly present my case.[1] The misrepresentation of the factual aspects of the case in documents that are published on the World Wide Web has led to

---

[1] Kansas appellate courts hear a case under the KJRA (K.S.A. § 77-601 et seq.) as though the case had been brought directly to the appellate court (*Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010)). Thus it is not necessary to consider stages of the case prior to review by the Kansas Supreme Court.

lasting, ongoing harm to me, and the goal of the current case is to alleviate ongoing and future harm by clarifying undisputed facts.

On March 1, 2021, I timely filed a *Complaint* in the U.S. District Court for the State of Kansas. That case was dismissed without prejudice by U.S. District Judge Kathryn H. Vratil with suggestions for addressing deficiencies if I chose to refile my case (ROA p. 4; *Amended Complaint*, Doc. 17, Exhibit 1, p. 4). I refiled my case on November 10, 2021 pursuant to K.S.A. § 60.518 (ROA p. 7; *Complaint*, Doc. 1). On May 5, 2022, I filed a motion to amend my complaint in order to address deficiencies raised by the Appellees (ROA p. 183; *Motion to Amend*, Doc. 17). On May 31, 2022, U.S. Magistrate Judge Angel D. Mitchell filed a *Report and Recommendation* to deny my motion to amend my complaint and to dismiss my case (ROA p. 237; *Report*, Doc. 20; Attachment 3). On August 16, 2022, U.S. District Judge Eric F. Melgren adopted Judge Mitchell's *Report and Recommendation* and granted Appellees' motion to dismiss my case (ROA p. 269, 277; *Order* and *Judgment*, Doc. 26, 27; Attachments 1 and 2). The *Report* did not reveal the reasons that led me to pursue this case and indeed is misleading concerning the facts. I had carefully documented the facts in my *Complaint* (ROA p. 192-202, *Amended Complaint*, Doc. 17, Exhibit 1, pp. 5-15).

## STATEMENT OF THE FACTS

It is not possible to evaluate the facts in an Equal Protection and Due Process case against the Kansas Supreme Court by considering solely the statements in the Kansas Supreme Court *Opinion* that led to this case. Yet, the factual background presented in the *Report* (ROA p. 238-240; *Report*, Doc. 20 pp. 2-4) was based entirely on the Appellees' *Opinion*, with no reference to factual statements in my *Complaint* that contradicted or clarified statements in the *Opinion*. Those contradictions and clarifications are essential for a fair presentation of the facts for this case. At the initial stages of a case when considering a motion to dismiss, a district court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (cited in *Report*, Doc. 20, p. 7). The identities of the parties in a case should not impact this rule. It is thus crucial that when considering the facts of this case, this Court not rely solely on the *Report* and the *Order* adopting the *Report*, but also on the facts as presented in the *Complaint* and *Amended Complaint* (ROA p. 193-197; Doc. 17, Exhibit 1, p. 6-10), which are summarized here. My factual statements were not contradicted in legal filings by the opposing party in the case that was

before the Kansas Supreme Court, and thus that court was not tasked with resolving conflicting factual claims between parties (ROA p. 190; *Amended Complaint*, Doc. 17, Exhibit 1, p. 3). This case is not about a disagreement with the Appellees' resolution of factual contradictions.

Like the present case, accountability and honesty were also at the heart of my judicial review case against the University of Kansas, which is the case that eventually led to this *Complaint*. The present case does not directly involve the University, but a brief summary of my judicial review case against the University is helpful in explaining the present case. The judicial review case is succinctly summarized and carefully documented, with citations both to the *Record* that was under review and to the filings for the case (ROA p. 41-58; Doc.1, Exhibit 1, pp. 6-23). I also briefly summarize the case here.

I brought my case against the University following my tenure-review year while I was an Assistant Professor in the Department of Molecular Biosciences. The *sole reasons* that the University gave for denying me tenure were factually incorrect: an intermediate-level of review incorrectly concluded that I had produced just two papers and "two small grants" when in fact I had generated three papers and five grants during my probationary period, and I was funded for almost my entire

probationary period, thereby demonstrating my ability to secure funding. *No other reason was given, or even hinted, at any stage of the review process,* for the denial of tenure, and *no other reasons were claimed in filings by the University,* which did not counter the accuracy of my factual statements regarding either the quality or quantity of my research, or the strongly positive evaluation of my teaching.

The factually correct assessment of my research productivity (papers and grants) was confirmed by an extensive, in-depth, lengthy, Department-level review which rated the overall research portion of my review as "Very Good" (ROA p. 42; Doc. 1, Exhibit 1, p. 7); the majority of tenured (and thus voting-eligible) faculty in my department, as well as the department's Chair, voted for granting me tenure. The "quantity" of my research productivity (papers and grants) was *the sole negative issue in my tenure evaluation*; both the quality of my research and my teaching were strongly praised, a fact that is entirely, and very misleadingly, omitted from the Appellees' *Opinion*. The Appellees' *Opinion* did acknowledge that the number of my grants was mis-stated at review steps subsequent to the Department-level of review. However, the *Opinion* made no mention at all of the fact that the number of my papers was also mis-stated in review steps subsequent to the

Department, and in fact repeated the inaccurate assessment without correction or clarification (ROA p. 54-55; Doc. 1, Exhibit 1, pp. 19-20) even though the University never argued that my assertions on paper count were inaccurate, and copies of all three papers were included in the *Record*.

Perhaps most harmful of all, the *Opinion* misleadingly states, and this Court's subsequent *Report and Recommendation* cites, that "the inaccuracy [in grant count] was just 'one feature of one criterion in the three-criterion evaluation process [and] did not fatally pollute that process or necessarily detract from or destroy the many accurate elements the decision makers had before them.' *Harsay*, 430 P.3d at 38." (ROA p. 239; *Report* p. 3, Doc. 20; ROA p. 54; Doc. 1, Exhibit 1, p. 19). That the court's *Report* would cite the misleading statement as justification for recommending the dismissal of my case (without also citing my arguments against that very same statement from the *Opinion*; ROA p. 54; Doc. 1, Exhibit 1, p. 19) is proof of the powerful, harmful, effect of the statement, and it also demonstrates that the statement is assumed by nearly everyone reading it to be an accurate and just rationale for ruling against me.

The "three-criterion review process" in the above statement from the *Opinion* refers to the three components to which tenure review was constrained at the time of my review: 1) Research; 2) Teaching; 3) Service. My teaching and service were praised; there was no criticism or other negative "elements" before decision makers concerning these other two criteria, whatsoever, either in my tenure review records or in court filings. (ROA p. 54; Doc. 1, Exhibit 1, p. 19.) Furthermore, the criterion of Research had just two "features": quality and quantity. The quality of my research was highly praised; there was no criticism or other negative "elements" before decision makers concerning the quality of my research, whatsoever, either in my tenure review records or in court filings. (ROA p. 54; Doc. 1, Exhibit 1, p. 19.) Thus, *quantity of research was the sole criticism, and the sole reason given, for denial of tenure*. To imply that there were additional criteria or "features" in my record that had been criticized (that is, teaching, service, and quality of research) was wrong. It falsely implied that I had other performance issues in addition to the mis-assessed "quantity" issue, or even worse, that I had personality issues that made me undesirable as a colleague and provoked the dishonesty during my review. This makes my legal case against a former employer appear foolish and unsupported by the

facts and, as I detail below, also appear unsupported by legal arguments. And this has made it impossible for me to gain employment that is appropriate for my level of education, abilities, and experience. If not corrected, the inaccurate and misleading statements in the *Opinion* will continue to severely harm me for the rest of my life.

Although the above examples are the most serious factual inaccuracies and misleading statements in the Appellees' *Opinion*, there are many additional examples, so the inaccuracies are a clear "pattern" in the *Opinion*. The *Opinion* misleadingly omits my arguments, also present in my Department's evaluation, that while external reviewers were qualified to assess the *quality* of my research (which they praised), they could not adequately address the *quantity* (which they did criticize), because, as allowed by University rules, I added to the quantity subsequent to the early deadline for external reviewer feedback in what was a nearly year-long review process (ROA p. 55-56; Doc. 1, Exhibit 1, pp. 20-21). It was also misleading for the Appellees to not cite additional critical information that my Departmental review committee, but not external reviewers, had concerning my productivity. As I explained (ROA p. 58; Doc. 1, Exhibit 1 p. 23), this information, as well as other expertise and knowledge that

only Department-level reviewers had, was extremely important in light of the law under which the Appellees reviewed my case, and thus its omission was not insignificant. Most critically, my Department had a letter from my postdoctoral mentor that asserted my intellectual independence, which was an issue in my case because my mentor had funded an early stage of the work for one of my papers. In that letter, my mentor stated: "I can assure you and your colleagues at Kansas that this paper and the approach that led to it were entirely Edina's inspiration and labor." (ROA p. 58; Doc. 1, Exhibit 1, p. 23.)

The factually incorrect statements were repeated in subsequent decision letters and never corrected at any stage of the tenure review process, most likely because subsequent steps of review were unaware of the inaccuracy of the intermediate-level summary assessments. Because I was unaware of the false statements until I filed my petition for judicial review and obtained my records, I was not able to properly defend myself in my responses to the negative decisions during the review process – another fact that is completely omitted from the Appellees' *Opinion*, which instead misleadingly quoted my inadequate, uninformed, panicked defenses made during the review process after I learned of the results from the intermediate-level of review. The

University never tried to defend the factually incorrect statements in its briefs and never explicitly stated that three papers and five grants were insufficient "productivity" in my department. Therefore, this should have been a straight-forward judicial review case in my favor under the Kansas Judicial Review Act (KJRA), K.S.A. § 77-601 *et seq*.

The KJRA was amended in 2009, and these amendments, which are critical for making the law effective, applied to my case (ROA p. 49-54; Doc. 1, Exhibit 1, pp. 14-19). The law is modeled after the federal Administrative Procedure Act. Prior to the 2009 amendments, case law incorrectly directed courts to disregard facts that detracted from the state agency decision, thus rendering the new law nearly useless. The district court in my case followed outdated case law that was invalidated by the 2009 amendments and subsequent case law (and this was a pattern, as it did the same thing in at least one prior case; ROA p. 49-50; Doc. 1, Exhibit 1. pp. 14-15). The Appellees likewise followed the old law, at least in practice, although unlike the district court, the Appellees did not cite outdated case law. I argued my case using the new definition of the law at every step of the litigation (ROA p. 44, 49-54; Doc. 1, Exhibit 1, pp. 9, 14-19), but the Appellees did not acknowledge the existence of my key legal arguments (for an issue that

they acknowledged as preserved) in their *Opinion*, much less address them in any way. In my *Motion for Rehearing or Modification* (ROA p. 123; Doc. 1, Exhibit 2), I requested that the Appellees apply the correct standard of review as it is now restricted by rules under the KJRA, or explain why they refused to do so by addressing my arguments. I also requested that the Appellees correct the many misleading or inaccurate factual statements in their *Opinion*, because the *Opinion* misrepresents my tenure review, misrepresents my legal case, and misrepresents me, and thus is severely harmful to my reputation (ROA p. 137-138; Doc. 1, Exhibit 2, pp. 15-16). The Appellees denied my motion without any statement or explanation (ROA p. 119; Doc. 1, Exhibit 1, Appendix C).

I realize that I cannot now contest the Appellees' judgment in favor of the University, and thus this case is of necessity not primarily about that judgment, nor about any action of the University. However, it was not merely the judgment of the Defendant that harmed me, but also the misrepresentation of my case. This was an injustice that is causing me lasting, continuous, harm (ROA p. 199; *Amended Complaint*, Doc. 17, Exhibit 1, p. 12).

The relief I sought in my proposed *Amended Complaint* is not a revised *Opinion*, which I agree would be inappropriate. An appropriate

remedy would be for the Appellees to publish a corrective statement, and/or cite a declaratory judgment from the present case whenever my KJRA case is cited (ROA pp. 202-203; *Amended Complaint*, Doc. 17 Exhibit 1 p. 15-16).

My request has relevance for more than just me. It is critical for courts to realize that in the internet age, when court opinions are permanently posted on the World Wide Web for all to see, they now have far more power to seriously and permanently injure litigants than they did in the past. Because of this much greater power to cause harm and destroy lives, courts now have greater responsibility to write opinions with care and to make reasonable and fair corrections when litigants make a request that they do so.

## SUMMARY OF THE ARGUMENTS

The District Court's argument for dismissal of my case had two key components: that the *Rooker-Feldman* doctrine bars this suit (ROA pp. 272-273; *Order,* Doc. 26 pp. 4-5), and that restrictions under 42 U.S.C. § 1983 justified denial of my motion to file an *Amended Complaint* (ROA pp. 273-275; *Order*, Doc. 26 pp. 5-7). A *Report and Recommendation* that was adopted in the Court's *Order* did not mention *Rooker-Feldman* but likewise stated that my case can't proceed under § 1983 (ROA pp.

245-247; *Report*, Doc. 20 pp. 9-11). In addition, the *Report* argued that

Eleventh Amendment Immunity bars this case (ROA p. 244-245; *Report*

Doc. 20 pp. 8-9).

*Rooker-Feldman* does not apply to this case because the harm that I

seek to remedy is separate from the harm caused by the Appellees'

judgment in my judicial review case. It is thus not "inextricably

intertwined" with the judgment in the judicial review case. The remedy

that I seek would have no effect on the judgment. In my arguments I

cite case law, including from the U.S. Supreme Court and from the 10th

Circuit, which define the *Rooker-Feldman* doctrine in a manner that

makes it inapplicable to my case.

While I argued that my case could proceed under § 1983, neither the

*Complaint* nor the proposed *Amended Complaint* was fully dependent

on § 1983 because I am not seeking monetary relief. In my proposed

*Amended Complaint*, § 1983 was cited only as one among other options

for granting injunctive or declaratory relief (ROA p. 189; *Amended*

*Complaint*, Doc. 17, Exhibit 1, p. 2). I did not seek relief under § 1983 in

my original *Complaint* (ROA p. 8; *Complaint*, Doc. 1 p. 2) and I simply

addressed the wording in this statute in case the District Court decided

to apply it to my case without my explicit request that it do so (ROA p.

20-21; *Complaint*, Doc. 1 pp. 14-15). I added § 1983 to my proposed

*Amended Complaint* in response to Appellees' motion to dismiss my case (ROA p. 184; *Motion to Amend*, Doc. 17 p 2). But even with the *Amended Complaint*, my case was not dependent on this law (ROA p. 189; *Amended Complaint*, Doc. 17, Exhibit 1, p. 2).

In my *Complaint*, my *Motion to Amend Complaint*, and my proposed *Amended Complaint*, I requested this cause of action to be considered as brought directly under the Fourteenth Amendment (ROA p.8, 184, 189; *Complaint*, Doc. 1 p. 2; *Motion to Amend*, Doc. 17 p 2; *Amended Complaint*, Doc. 17, Exhibit 1, p. 2). Because I am not seeking money damages in this case, my request that this case be considered directly under the Fourteenth Amendment is consistent with case law, which I cited in my *Response* to Appellee's motion to dismiss my case (ROA pp. 165-167; *Response*, Doc. 15 pp. 4-6) and more briefly here.

In my proposed *Amended Complaint*, I also added U.S.C. §§ 2201, 2202 under which the relief I seek could be granted instead of under § 1983 (ROA p. 189; *Amended Complaint*, Doc. 17 Exhibit 1, p. 2). The District Court did not address my request that my case be considered under laws different from, or in addition to, § 1983. For this reason, if this Court does not agree with my arguments that my case could proceed under § 1983, then a remand for consideration of the alternative laws is necessary.

I was not certain whether or not the District Court's *Order* accepted
my arguments for why Eleventh Amendment Immunity does not apply
to my case. I address Eleventh Amendment Immunity along with
consideration of § 1983, because the *Report* considered § 1983 in my
case primarily as an issue of Eleventh Amendment Immunity (ROA pp.
244-245; *Report*; Doc. 20 pp. 8-10).


## WHETHER THE DISTRICT COURT ERRED BY APPLYING THE *ROOKER-FELDMAN* DOCTRINE TO THIS CASE

I have argued in my *Response to Memorandum in Support of
Defendant's Motion to Dismiss* that the *Rooker-Feldman* doctrine does
not bar this suit (ROA pp. 163-165; Plaintiff's *Response*, Doc. 15, pp.
2-4). My prior arguments are summarized here.

The U.S. Supreme Court explained that "under the *Rooker-Feldman*
doctrine, federal district courts lack jurisdiction over 'cases brought by
state-court losers complaining of injuries caused by state-court
*judgments* rendered before the district court proceedings commenced
and inviting district court review and rejection of those *judgments*.'"
*Agrawal v. Ogden*, No. 18-6054, at *6-7 (10th Cir. Nov. 28, 2018), citing
*Exxon Mobil Corp. v. Saudi BasicIndus. Corp.*, 544 U.S. 280, 284 (2005)
( emphases added). Were the relief I seek granted, it would not in any

way undo the judgment of the state court, nor alleviate any effects of that judgment. "[T]he doctrine does not bar claims where "the *relief sought* in the federal action would not reverse or undo the *relief granted* by the state court." *Mo's Express*, *LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006). Furthermore, even if a granted remedy were to indicate that the Appellees' judgment was unjust, such a situation would not bar this case under the doctrine: "[T]he *Rooker–Feldman* doctrine does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1282 (10th Cir. 2012).

In order for the *Rooker-Feldman* doctrine to apply to this case, my claim must be "'inextricably intertwined' with a state court judgment." *Pittsburg City Rural Water Dist. v. McAlester*, 358 F.3d 694, 707 (10th Cir. 2004) (citing *Dist. of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). In the case law cited by the district court *Order*, the relief sought was "inextricably intertwined" with the state court judgment (ROA pp. 272-273; *Order*, Doc. 26, pp. 4-5). But this is not so in my case. In *Pittsbugh*, the 10th Circuit applied the following standard to what is considered as "inextricably intertwined":

– 19 –

> To apply the "inextricably intertwined" standard, we ask "'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Kenmen,* 314 F.3d at 476 (quoting *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir. 1996)). "In other words, we approach the question by asking whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Kenmen,* 314 F.3d at 476 (emphasis omitted). If it did, *Rooker-Feldman* deprives the federal court of jurisdiction; if it did not, *Rooker-Feldman* provides no bar.
>
> *Pittsburg Cty Rural Water Dist. v. McAlester*, 358 F.3d 694, 707 (10th Cir. 2004)

The injury for which I seek remedy in the present case is not the result of the state court judgment, and therefore it is not "inextricably intertwined" with it. Contrary to an assertion in the *Report*, revealing the facts does not equate to "overturning the court's decision" (ROA p. 247; *Report*, Doc. 20 p. 11). The judgement and the facts are two very different things (ROA p. 163; Plaintiff's *Response*, Doc. 15 p. 2). One is generated by a court; the other already exists prior to any consideration by the court. Thus, unlike judgments, facts are not created by courts and cannot ever be "overturned." For the case that was before the Appellees, one might make subjective arguments as to whether or not I was entitled to a decision in my favor. But I am certain that I was, and now am, entitled to the truth. The truth is not hard to discern when

facts are uncontested between opposing parties or when they are objectively verifiable.

To avoid any appearance of "inextricable intertwining," I was careful not to base my *Complaint*, in particular the remedy sought, primarily on legal arguments that the Appellees made in support of their judgment. The U.S. District Court's *Order* correctly states that I brought up problems with the legal arguments in the appellees' *Opinion* (ROA p. 274; *Order*, Doc. 26 p. 6). However, my purpose was to point out that the failure to acknowledge my key legal arguments, much less address them, at a stage of the case when I was unlikely to receive further review, misrepresented the legal aspects of my case and was a violation of my right to due process. That is, misrepresentation of my judicial review case was not restricted to factual matters, and this is relevant to my due process claim, even if I can be granted correction only for factual matters.

Likewise, the issue that Appellees followed over-ruled, ineffective, case law rather the current law that I cited in my state court filings is now relevant not to any effects on the Appellees' judgment but to my claim of due process violation. This is because Kansas state courts, including the state district court judge who handled my case, have done this repeatedly in cases involving academia, even after being corrected

by appellate courts (ROA p. 49-51; Doc 1 Exhibit 1, pp. 14-16). This supports my due process claim (and equal protection claim) because while federal courts will generally not address due process violations from state court proceedings, especially if primarily procedural rather than substantive in nature, they will do so if there is a historical pattern of such violations (ROA p. 59-61; Doc. 1 Exhibit 1, pp. 24-26).

My case at the U.S. District Court did not advance to the level at which my claims to constitutional violations could be addressed (I am not expected to make legal arguments in a *Complaint*), and I hope to have opportunity to argue the constitutional issues in depth. It is premature to do so now, but I bring up the constitutional issue to explain why it was important for me to mention the legal "errors" made in the Appellees' *Opinion* even if those legal arguments, and thus the judgment, cannot now be reversed.

### WHETHER THE DISTRICT COURT ERRED BY USING THE WORDING OF 42 U.S.C. § 1983 TO JUSTIFY DISMISSAL OF THE CASE.

The second reason given in the U.S. District Court's *Memorandum and Order* for the dismissal of my case as well as for denying my motion to amend my *Complaint* is that the relief I seek is prohibited by the wording of § 1983 (ROA p. 274-275; *Order*, Doc. 26 pp. 6-7). However,

while I addressed the restrictions imposed by the wording of § 1983,
neither my original *Complaint* (ROA p. 8; Doc. 1, p. 2) nor the proposed
*Amended Complaint* (ROA p. 189; Doc. 17, Exhibit 1, p. 2) depended
solely on this statute for relief. In fact the original *Complaint*
mentioned § 1983 solely to address its wording in case the court chooses
to require applying this law, as was done in the original filing of this
case (in which I had not cited § 1983 at all) (ROA p. 20-21; *Complaint*,
Doc. 1 pp. 14-15). In the initial *Complaint,* I sought relief directly under
the Fourteenth Amendment (ROA p. 8; *Complaint* p. 2*,* Doc. 1), while in
the proposed *Amended Complaint* I sought declaratory and injunctive
relief under the Declaratory Judgment Act, U.S.C. §§ 2201, 2202, and
either declaratory or injunctive relief under U.S.C. § 1983 (ROA p. 189;
*Amended Complaint*, Doc. 17, Exhibit 1, p. 2). I added the additional
statutes, including § 1983, to the proposed *Amended Complaint* in order
to address Appellees' arguments in a *Memorandum in Support of
Defendant's Motion to Dismiss* (ROA pp. 183-184; *Motion to Amended
Complaint*, Doc. 17 p. 1-2). Thus my case was not dependent on U.S.C. §
1983.

Even if relief in my case had depended on U.S.C. § 1983, this should
not have led to dismissal of this case. In my *Response* to Appellees'

motion to dismiss my case, as well as in my *Objection to the Report and Recommendation*, I argued extensively that whether the relief sought is monetary or not is critical with respect to Eleventh Amendment Immunity and § 1983 (ROA pp. 167, 169-170; *Response*, Doc. 15 pp. 6, 8-9; ROA pp. 258-260; *Objection*, Doc. 25 pp. 4-6). When a suit is brought against state officials in their official capacities, and a monetary award is sought, any award would come from the state, not the state official, and hence the state official is perhaps reasonably considered as being "a state" and not "a person" with respect to the Eleventh Amendment and § 1983. But when injunctive or declaratory relief is sought, then a state official is considered to be "a person" and not "a state," and it is thus possible to overcome Eleventh Amendment Immunity.[2]

In arguing that Eleventh Amendment Immunity bars relief in my case under § 1983, the *Report* cited cases in which plaintiffs sought monetary relief (ROA pp. 244-245; *Report*, Doc. 20 pp.8-9). One of the cited cases makes clear (in a footnote) that in a case such as mine, in

_____

[2] Using these arguments, the Kansas Supreme Court can be considered as a "person," which is no more ridiculous than considering a state official a non-person "state." Thus, it is a proper defendant in this case. The *Report* incorrectly states that my *Amended Complaint* added the Kansas Supreme Court as a defendant (Doc. 20, p. 6). The Kansas Supreme Court had been a defendant also in the original *Complaint* (Doc. 1).

which a plaintiff seeks not a monetary award but injunctive or

prospective relief, state officials are "people," not "states":

> Of course a state official in his or her official capacity, when
> sued for injunctive relief, would be a person under § 1983
> because "official-capacity actions for prospective relief are not
> treated as actions against the State." *Kentucky v. Graham*,
> 473 U.S., at 167, n. 14; *Ex parte Young*, 209 U.S. 123, 159-160
> (1908). This distinction is "commonplace in sovereign
> immunity doctrine," L. Tribe, American Constitutional Law §
> 3-27, p. 190, n. 3 (2d ed. 1988)....
> *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10
> (1989).

The *Order* perhaps appears to acknowledge that the arguments

concerning Eleventh Amendment Immunity do not apply to my case

(ROA p. 274; *Order*, Doc. 26 p. 6) and yet still argues that the wording

of § 1983 precludes relief in my case because I did not claim that

declaratory relief was unavailable (ROA pp. 274-275; *Order*, Doc. 26 pp.

6-7). But in my initial *Complaint* I did state that I had not sought

declaratory relief and that "... a declaratory relief was not a relevant

aspect of my prior case, and the restriction related to declaratory relief

does not bar this Court from hearing this case." (ROA pp. 20-21;

*Complaint*, Doc. 1 pp. 14-15). The *Order* addresses my statement by

claiming that just because I did not seek declaratory relief does not

mean that it was unavailable (ROA p. 275; *Order*, Doc. 26 p. 7). But

such an argument could be levied against any statement that declaratory relief was not sought because it was inappropriate. I sought only reinstatement to my former position, which is clearly injunctive relief. Declaratory relief was simply not a remedy for any issue that was under judicial review in state courts. It is thus impossible for me to conceive how it could have been "available," or how to better argue that it was not, other than to state more or less what I stated, which is that "it was not a relevant aspect of my prior case."

**WHETHER THE DISTRICT COURT ERRED BY NEGLECTING TO ACKNOWLEDGE AND CONSIDER THE ALTERNATIVE AUTHORITIES TO U.S.C. § 1983 UNDER WHICH DECLARATORY OR INJUNCTIVE RELIEF WERE SOUGHT IN BOTH THE ORIGINAL *COMPLAINT* AND THE PROPOSED *AMENDED COMPLAINT*.**

As mentioned above and explained in my *Response to Memorandum in Support of Defendant's Motion to Dismiss* and in my *Objection to the Report and Recommendation*, in my *Complaint,* and in my proposed *Amended Complaint,* I requested that this cause of action be considered directly under the Fourteenth Amendment rather than (or in addition to) § 1983. Doing so could make concerns about the wording of § 1983 moot. It would avoid the explicit requirement that a §1983 suit be brought against a *person* and thus avoid any convoluted argument concerning wether or not a justice is a state or a person (ROA pp.

165-167; *Response*, Doc. 15 pp. 4-6; ROA p. 261; *Objection*, Doc. 25 p. 7).

The Fourteenth Amendment explicitly applies to *states*, which includes

state agencies and state officials. Neither the *Report and*

*Recommendation* nor the *Order* addressed my request that this case be

considered as brought directly under the Fourteenth Amendment. But

doing so is important considering that both the *Report* and *Order* argue

that my case can't proceed under § 1983.

I did not name the State of Kansas as a defendant in this suit (one

would do so only if one were seeking money damages). But it is "state

action" by state officials that I object to, as required for a suit under the

Fourteenth Amendment. Thus, Appellees in this case are indeed "the

state" with respect to the Fourteenth Amendment, but they are people

with respect to the Eleventh. My analysis is consistent with that

provided by the 10th Circuit in *Hill*:

> [The case] proceeds on the related assumption that the state
> employee is somehow engaging in something other than state
> action for purposes of the Eleventh Amendment yet is
> engaging in sufficient state action for purposes of the
> Fourteenth Amendment to provide us with jurisdiction; after
> all, we can enforce a constitutional right only as against state,
> not private, action. *See id.; Virginia v. Rives*, 100 U.S. 313,
> 318, 25 L.Ed. 667 (1879).
>
> *Hill v. Kemp*, 478 F.3d 1236, 1256 (10th Cir. 2007)

Typically, an action is brought under the Fourteenth Amendment

rather than under §1983 when plaintiffs seek to avoid some restriction under §1983, such as a statute of limitations or a restriction on money awards. It makes sense that suits involving a request for money damages should have more restrictions applied, as defined by Congress. Therefore, when money damages are sought directly under the Fourteenth Amendment, such claims are typically dismissed. A clear distinction has been made between Fourteenth Amendment cases that seek money damages and those that do not:

> The only relief sought by Plaintiffs in the complaint is compensatory and punitive damages. Plaintiffs' direct right of action under the Fourteenth Amendment will be dismissed because the Fourteenth Amendment does not provide Plaintiffs with a private right of action to seek damages against state or municipal officials; rather, it provides a right of action for those seeking injunctive relief. *See Farmer v. Ramsay,* 41 F.Supp.2d 587, 591 (D.Md.1999) ("The Fourth Circuit has explicitly rejected the argument that an implied cause of action for damages exists under the Fourteenth Amendment.") (*citing Cale v. Covington,* 586 F.2d 311 (4th Cir.1978)). Plaintiffs may seek monetary damages for violations of their Fourteenth Amendment rights through 42 U.S.C. § 1983, which they have pled as their third cause of action.

> *Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 495-96 (D. Md. 2015)

While the U.S. District Court did not address my request to consider this action as brought directly under the Fourteenth Amendment, the

Appellees did so (ROA p. 154; *Memorandum*, Doc. 6 p. 5). I therefore argued extensively in my *Response to Memorandum in Support of Defendant's Motion to Dismiss* that a case brought directly under the Fourteenth Amendment, and directly under the Constitution, is appropriate in some cases and would not set a harmful precedent (ROA pp. 165-167, p. 171-173; *Response*, Doc. 15 pp. 4-6, 10-12).

Lastly, the U.S. District Court did not address the fact that in my proposed *Amended Complaint*, I listed also U.S.C. §§ 2201, 2202 as statues under which relief can be granted in my case (ROA p. 189; *Amended Complaint*, Doc. 17, Exhibit 1, p. 2). Thus my case is not dependent on § 1983 to proceed, and the District Court should not have dismissed my case just because I added § 1983 to my proposed *Amended Complaint*.

CONCLUSION

The Judgment of the District court to dismiss this case should be reversed, and this case should be remanded for consideration of laws that I cited in addition to § 1983 under which this case was brought. Furthermore, the District Court should grant my motion to file my proposed *Amended Complaint*.

Dated: December 21, 2022

Respectfully submitted,

   s/ Edina Harsay
Edina Harsay, Ph.D.
1100 Stone Meadows Dr.
Lawrence, Kansas 66049
Phone: (785) 813-1757
Email: eharsay@icloud.com
*Plaintiff-Appellant, Pro se*

### CERTIFICATE OF COMPLIANCE

Pages 1-29 of this document contain 6,383 words, and thus this

document is under the 13,000 word limit (Type Volume Limitation) set by

F.R.A.P. Rule 32(a)(7)(B)(i).

### CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, the above and
foregoing was filed with the clerk of the court by using the CM/ECF
system, which will send notice of electronic filing to all those individuals
currently electronically registered to receive notices of filings for this
case, including the following:
Stephen Phillips, Attorney for Defendants/Appellees
Asst. A.G., Civil Litigation Div.
Office of the Attorney General Derek Schmidt
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597

   s/ Edina Harsay
Edina Harsay, Ph.D.
*Plaintiff, Pro se*

# United States District Court

-------------------------- DISTRICT OF KANSAS---------------------------

EDINA HARSAY,

              **Plaintiff,**

v.                                     **Case No:   21-4080-EFM**

MARLA LUCKERT, DAN BILES,
EVELYN Z. WILSON, KEYNEN WALL,
JR., MELISSA STANDRIDGE, ERIC
ROSEN, and THE KANSAS SUPREME
COURT,

              **Defendants,**

## JUDGMENT IN A CIVIL CASE

☐     Jury Verdict.   This action came before the Court for a jury trial.  The issues have been
tried and the jury has rendered its verdict.

☒     Decision by the Court.  This action came before the Court.  The issues have been
considered and a decision has been rendered.  IT IS ORDERED

that pursuant to the Memorandum and Order filed on August 16, 2022, Doc. 26, Defendants'
Motion to Dismiss, Doc. 5, is GRANTED.

IT IS FURTHER ORDERED that Magistrate Judge Mitchell's Report and Recommendation,
Doc. 20, is ADOPTED and Plaintiff's Motion to Amend Complaint, Doc. 17, is DENIED.

This case is closed.

_August 16, 2022_____            SKYLER O'HARA
       Date                        CLERK OF THE DISTRICT COURT

                                    by: _s/  Cindy McKee_____
                                       Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EDINA HARSAY,

      *Plaintiff,*

vs.                                                                    Case No. 21-CV-4080-EFM-ADM

MARLA LUCKERT, et al.,

      *Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 5) and Magistrate Judge Angel D. Mitchell's Report and Recommendation (Doc. 20) that the Court deny Plaintiff's Motion for Leave to Amend (Doc. 17). Plaintiff filed an objection to the Magistrate Judge's Report and Recommendation (Doc. 25). For the reasons stated below, the Court grants Defendants' Motion to Dismiss, overrules Plaintiff's objections, and adopts the recommended decision of the Magistrate Judge.

### I.        Factual and Procedural Background

Proceeding pro se, Plaintiff Edina Harsay brings this Complaint against the Kansas Supreme Court and six of its justices, Marla Luckert, Dan Biles, Evelyn Wilson, Keynen Wall, Jr., Melissa Standridge, and Eric Rosen, in their official capacities. Harsay alleges that the Kansas

Supreme Court made serious factual mistakes and presented misleading statements in addressing her case before it in 2018[1] and requests a revised opinion correcting those errors.

Defendants have since moved to dismiss Harsay's claims and Harsay has requested leave to amend her Complaint. Magistrate Judge Mitchell has recommended that the Court deny Harsay's request.

## II.    Legal Standard

### A.    Motions to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction."[2] A presumption exists against jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction."[3] "Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.' "[4] If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the district court must accept all factual allegations in the complaint as true.[5]

---

[1] *Harsay v. Univ. of Kan.*, 308 Kan. 1371, 430 P.3d 30 (2018), *cert. denied*, 140 S. Ct. 201 (2019), *reh'g denied*, 140 S. Ct. 568 (2019).

[2] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[3] *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).

[4] *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (citation omitted).

[5] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425 (2001).

### B.     Objections to a Magistrate Judge's Dispositive Order

The Court reviews de novo any part of a magistrate judge's disposition on dispositive motions to which parties properly object.[6]  When a magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in the case, that ruling is to be treated as dispositive.[7]  A party's objections to a magistrate's order must be timely and specific.[8]  The court "may accept, reject, or modify the recommended decision; receive further evidence, or recommit the matter to the magistrate judge with instructions."[9]

### C.     Pro Se Litigants

Because Harsay appears pro se in this case, the Court must liberally construe her pleadings.[10]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which the plaintiff could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[11]  The Court, however, is not an advocate for the pro se litigant.[12]

---

[6] Fed. R. Civ. P. 72(b)(3); *see also Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

[7] *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1157 (D. Kan. 2000) (citing *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Me. 1998)).

[8] *See* Fed. R. Civ. P. 72(b)(2) (stating objections must be timely filed within fourteen days of the magistrate judge's issuance of a recommendation).

[9] Fed. R. Civ. P. 72(b)(3).

[10] See *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [the plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.") (citation omitted).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[12] *Id.*

### III.    Analysis

**A.    The Court lacks subject-matter jurisdiction over Harsay's claims.**

Defendants move to dismiss Plaintiff's Complaint on multiple grounds, including for lack of subject-matter jurisdiction and for failure to state a claim.[13]  Because the Court cannot look to the merits of a case where it lacks jurisdiction, the Court will first address Defendant's argument under the *Rooker-Feldman* doctrine.[14]

The *Rooker-Feldman* doctrine bars federal review of state court judgments "where (1) the plaintiff lost in state court, (2) the state-court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the federal claim was filed, and (4) the plaintiff is asking the district court to review and reject the state judgment."[15]  *Rooker-Feldman* does not apply to claims that would be identical to state court claims, nor to "claims that do not rest on any allegation concerning the state-court proceedings or judgment."[16]  Applicability of the *Rooker-Feldman* doctrine is determined by the relief sought.[17]

Here, Plaintiff requests a revised opinion from the Kansas Supreme Court.  Harsay asserts that *Rooker-Feldman* is inapplicable because she does not seek to *overturn* the state court judgment

---

[13] *See* Fed. R. Civ. P. 12(b)(1) and (b)(6).

[14] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine is a bar to subject-matter jurisdiction.  *See Market v. City of Garden City*, 723 F. App'x 571, 575 (10th Cir. 2017) (directing district court to vacate portion of district court's opinion dismissing for failure to state a claim where the district court lacked jurisdiction under *Rooker-Feldman*).

[15] *Market*, 723 F. App'x at 572–73 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[16] *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006).

[17] *See PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) ("Additionally, our recent *Rooker-Feldman* jurisprudence has emphasized the relief sought by federal-court plaintiffs.") (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006)).

but, instead, requests a mandate that the Kansas Supreme Court make reasonable and fair corrections to the factual basis for its opinion. Essentially, Harsay argues that because she does not demand reversal of the Kansas Supreme Court's decision, but asks only for factual corrections, *Rooker-Feldman* is inapplicable.

This Court disagrees. Harsay alleges that purported factual inaccuracies in the Kansas Supreme Court's opinion have harmed her reputation. To provide the relief Harsay seeks, this Court would have to review and reject the Kansas Supreme Court's findings. This is the exact circumstance *Rooker-Feldman* prohibits.[18] The Court therefore lacks subject-matter jurisdiction over Harsay's claims and her case must be dismissed.

**B.    Amendment of Harsay's Complaint Would Be Futile.**

Since Defendants' filing of their Motion to Dismiss, Harsay has moved for leave to amend her Complaint. Magistrate Judge Mitchell recommended that the motion be denied, and Harsay has objected to that recommendation. Because denial of a motion to amend is treated as disposition of a dispositive motion, the Court reviews the portions of the Magistrate Judge's order to which Harsay objects de novo.[19]

First, Harsay objects to the Magistrate Judge's presentation of the history of Harsay's tenure case.[20] In reviewing the Report & Recommendation, however, the Magistrate Judge did not make any factual findings regarding Harsay's original case. She simply presented the history

---

[18] *See generally Kline v. Biles*, 2016 WL 6680940 (D. Kan. 2016), *aff'd*, 861 F.3d 1177 (10th Cir. 2017) (rejecting claims as barred by the *Rooker-Feldman* doctrine where "[a]lthough phrased nine different ways, the remaining claims are nothing more than an attempt to appeal the Kansas Supreme Court's decision in a lower federal court").

[19] *See Pedro*, 118 F. Supp. 2d at 1157.

[20] Although Harsay addressed Magistrate Judge Mitchell's presentation of the facts after her legal arguments, for clarity, the Court addresses this issue first.

of Harsay's case as laid out in the record, including in Harsay's own attached exhibits.  The Court finds no material error in this recitation of the facts.  Nonetheless, the Court notes that Harsay has asserted that there was no evidence of any weaknesses in her tenure case, other than those weaknesses which were misrepresented.  The Court also notes that Harsay has asserted that the Kansas Supreme Court relied on an outdated and invalid interpretation of case law in deciding her case.

Next, Harsay argues that the cases cited by the Magistrate Judge are not relevant because they involve cases in which plaintiffs sought monetary damages, which Harsay does not seek.[21] Harsay is correct that the cited cases involved requests for monetary damages and a request for an order requiring payment, rather than injunctive relief.  The Court believes it likely, however, that the Magistrate Judge cited those cases merely as a background explanation of Eleventh Amendment sovereign immunity and § 1983.  Regardless, the Court recognizes that Harsay is not seeking monetary damages, so her Motion for Leave to Amend is not denied on that basis.

As noted by Magistrate Judge Mitchell, injunctive relief against judicial officers is prohibited under § 1983 absent a showing that a declaratory decree was violated, or declaratory relief was unavailable.[22]  In her objection to the Magistrate's report, Harsay notes that she had alleged in her original Complaint that declaratory relief was unavailable in her tenure case at the Kansas Supreme Court.[23]  Harsay's original Complaint explained that declaratory relief was not

---

[21] *See Blatchford v. Native Vill. of Noatak*, 501 U.S. 775 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Harper v. Off. of Att'y Regul.*, 2014 WL 5801173 (D. Colo. 2014); *Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114 (10th Cir. 2010).

[22] *Ysais v. New Mexico*, 373 F. App'x 863, 866 (10th Cir. 2010); *see also* 42 U.S.C. § 1983.

[23] Harsay asserts that she removed this language in her proposed amended complaint because she misunderstood Defendants' argument in their Motion to Dismiss.  She asserts that she will add that language back into her Amended Complaint if the Court permits filing.

available in her tenure case because she did not seek a declaratory judgment.  But that Harsay did not seek declaratory relief does not mean it was unavailable.[24]  Thus, this argument cannot save Harsay's case.

Having addressed Harsay's objections and reviewed the Magistrate Judge's Report and Recommendation, the Court adopts Magistrate Judge Mitchell's conclusion that Harsay's Motion for Leave to Amend should be denied on the basis of futility.[25]  Although the Court understands Harsay's allegation that the Kansas Supreme Court misrepresented or omitted critical factual details in her tenure case and understands Harsay's desire to correct the record, federal district courts are simply not granted the authority to provide the remedy Harsay seeks.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **GRANTED.**

**IT IS FURTHER ORDERED** that Magistrate Judge Angel D. Mitchell's Report and Recommendation (Doc. 20) is adopted.  Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 17) is **DENIED.**

---

[24] *See Grove v. Groom*

*e*, 2018 WL 10879451, at *6 (D. Colo. 2018), *aff'd and remanded*, 817 F. App'x 551 (10th Cir. 2020) ("While Plaintiff does allege 'declaratory relief was unavailable to him,' this allegation is a legal conclusion that is not entitled to the presumption of truth.") (citations and alteration omitted).

[25] The Court notes that it has reviewed all of Harsay's filings, exhibits, and legal arguments, even if each argument has not been explicitly addressed in this Order.

-7-

**IT IS SO ORDERED.**

Dated this 16th day of August, 2022.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

EDINA HARSAY,                          )
                                        )
                    Plaintiff,          )
                                        )
         v.                             )        Case No. 21-cv-4080-EFM-ADM
                                        )
KANSAS SUPREME COURT, et al.,           )
                                        )
                    Defendants.         )

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Edina Harsay ("Harsay") brings this action against the Kansas Supreme Court and six current Kansas Supreme Court members in their official capacities: Chief Justice Marla J. Luckert and Justices Eric S. Rosen, Dan Biles, Evelyn Z. Wilson, Keynen Wall, Jr., and Melissa Taylor Standridge ("defendants" or "Justices," as appropriate).  This matter now comes before the court on Harsay's Motion for Leave of Court to File a First Amended Complaint.  (ECF 17.)  By way of this motion, Harsay seeks leave to amend her complaint to correct deficiencies noted in defendants' memorandum in support of their motion to dismiss (ECF 6) that Harsay argues "might prevent the Court from considering the merits of this case."  (ECF 17, at 1.)  Harsay says her proposed amended complaint clarifies the statutes under which this action is brought and "articulate[s] better the need for a remedy and the particular remedy sought."  (ECF 17, at 1.) Defendants contend the court should deny Harsay's motion on the grounds that the proposed amended complaint is futile.  For the reasons set forth below, the court agrees and recommends that the assigned district judge deny Harsay's motion to amend.[1]

---

[1] If a magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in a case, courts have found such a ruling to be dispositive for which review may be sought pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  *See Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *1 (D. Kan. June 30, 2008); *see also Sprint Commc'ns Co. v. Cable One, Inc.*, No. 11-2685-JWL, 2014 WL 588068, at *1 (D. Kan. Feb. 14, 2014) (citing

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This is the second civil rights case Harsay has filed in this court concerning the same subject matter.  But this matter has been litigated in many courts over many years—more than a decade, in fact.

Years ago, Harsay was a non-tenured professor at The University of Kansas ("KU").  On April 23, 2010, KU told Harsay that then-Chancellor Bernadette Gray-Little had decided not to grant her tenure and to terminate her employment.  (ECF 1-1, at 57-58.)[2]  Harsay filed a petition in Douglas County District Court asking for judicial review of KU's decision pursuant to the Kansas Judicial Review Act ("KJRA"), KAN. STAT. ANN. § 77-601 *et seq*.  (*Id.*)  The court ultimately found in favor of KU, finding its decision "was supported by substantial evidence and was not unreasonable, arbitrary, or capricious."  (*Id.*)

The Kansas Court of Appeals reversed.  That court's opinion discussed the letter setting forth KU's final decision as to Harsay, which stated merely that KU's chancellor accepted the University Committee on Promotion and Tenure's ("University Committee") recommendation to deny Harsay tenure.  (*Id.* at 59-60, 91.)[3]  The Kansas Court of Appeals determined that the University Committee had incorrect information regarding the number of grants awarded to Harsay when it made the recommendation to deny Harsay tenure.  (*Id.* at 91-92.)  The chancellor's

---

*Navegante Grp., Inc. v. Butler Nat'l Serv. Corp.*, No. 09-2554-JWL, 09-2466-JWL, 2011 WL 1769088, at *3 (D. Kan. May 9, 2011) ("[F]or purposes of the standard of review, a magistrate judge's denial of a motion to amend *for reasons other than futility* is a nondispositive order) (emphasis added).  Because the undersigned recommends denial of the motion to amend on the basis of futility, the magistrate judge issues a report and recommendation to the district judge.

[2] These facts are from the Kansas Supreme Court's opinion issued in this case, which is included in Exhibit 1 to Harsay's Complaint as Appendix A.  (ECF 1-1, at 48-69.)  The official case cite is *Harsay v. Univ. of Kan.*, 430 P.3d 30 (Kan. 2018).

[3] The Kansas Court of Appeals' opinion is included in Exhibit 1 to Harsay's Complaint as Appendix B.  (ECF 1-1, at 72-94.)  The official case cite is *Harsay v. Univ. of Kan.*, 376 P.3d 98, 2016 WL 4069604 (Kan. Ct. App. July 29, 2016), *rev'd*, 430 P.3d 30 (Kan. 2018).

letter did not contain specific findings, however, and the court refrained from "speculat[ing] on whether the chancellor's decision would have been different if she had before her a recommendation from the University Committee based on accurate information." (*Id.* at 92-93.) The Kansas Court of Appeals remanded the case for "further consideration by the University's various tenure committees . . . based on Dr. Harsay's correct history of research productivity and scholarly works." (*Id.* at 93.)

On appeal, the Kansas Supreme Court reversed the Court of Appeals and affirmed the Douglas County District Court's judgment in favor of KU.  The Kansas Supreme Court acknowledged that the number of Harsay's funded grants was misstated twice in the tenure process record.  But the court found this inaccuracy was just "one feature of one criterion in the three-criterion evaluation process [and] did not fatally pollute that process or necessarily detract from or destroy the many accurate elements the decision makers had before them." *Harsay*, 430 P.3d at 38.  The Kansas Supreme Court found KU's decision was supported by substantial evidence "in light of the record as a whole." *Id.*

Harsay filed a motion for rehearing or modification, arguing the Kansas Supreme Court applied a standard of review that was invalidated by 2009 amendments to the KJRA and incorrectly disregarded evidence in the tenure process record that detracted from the University's decision.[4] She also asked the court to correct statements in the opinion regarding herself and her tenure review that she characterized as "misleading." (*Id.*)  The Kansas Supreme Court denied Harsay's motion.[5]

---

[4] The motion for rehearing or modification is included as Exhibit 2 to Harsay's Complaint. (ECF 1-2.)

[5] The Kansas Supreme Court's denial of Harsay's motion is included in Exhibit 1 to Harsay's Complaint as Appendix C.  (ECF 1-1, at 95.)

Harsay then petitioned the United States Supreme Court for review.  The Supreme Court denied that petition.[6]

Undeterred, Harsay refused to give up the fight.  On March 1, 2021, she filed her first complaint in this court claiming the Kansas Supreme Court Justices deprived her of rights under the Fourteenth Amendment to the United States Constitution.  Specifically, she alleged that the Justices violated (1) her right to equal protection by denying her the benefit of the KJRA because of her status as an academic and a pro se litigant and (2) her right to substantive due process by "misrepresenting" her side of the case in their opinion and "making misleading or inaccurate statements."  (ECF 1, at 6, in Case No. 5:21-cv-04017 (hereinafter "*Harsay 1*").)  She asked the court to order the Justices to issue a revised opinion that "honestly presents [her] side of the case and omits or clarifies statements that are misleading and harmful"; acknowledges and addresses her legal arguments; and reprimands the Douglas County District Court for how it handled her case.  (*Id.* at 7.)  She did not seek damages or declaratory relief.

The court (specifically, the undersigned) granted Harsay leave to proceed *in forma pauperis* and screened her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  (ECF 4 in *Harsay 1*.)  In doing so, the court recommended that the presiding district judge dismiss her complaint because (1) Harsay sought injunctive relief for acts or omissions that the Justices took in their judicial capacity, which is unavailable under 42 U.S.C. § 1983; (2) the Justices are protected by Eleventh Amendment sovereign immunity; and (3) this court does not have authority to issue an order directing state judicial officers in the performance of their official duties.  The presiding

---

[6] Harsay's Petition for Writ of Certiorari is Exhibit 1 to Harsay's Complaint and includes Appendices A-D.  (ECF 1-1, at 1-98.)  Her petition for writ of certiorari to the Supreme Court of Kansas was denied on October 7, 2019, and her petition for rehearing was denied on November 25, 2019.  *Harsay v. Univ. of Kan.*, 140 S. Ct. 201, *reh'g denied*, 140 S. Ct. 568 (2019).

district judge agreed and dismissed Harsay's complaint as "legally deficient on account of (1) failure to state a claim under Section 1983, Title 42, U.S.C.; (2) Eleventh Amendment sovereign immunity; and (3) the court's inability to grant plaintiff the relief requested." (ECF 11 in *Harsay 1*.)  On June 28, 2021, the court entered judgment and dismissed the case without prejudice.  (ECF 12 in *Harsay 1*.)

Nearly five months later, on November 10, 2021, Harsay filed a nearly identical action in this court except that, in the current action, she names the Kansas Supreme Court as an additional defendant.  Like in *Harsay 1*, she contends defendants violated her right to equal protection under the KJRA, and thus her constitutional rights under the Fourteenth Amendment's Equal Protection Clause and Due Process Clause by allegedly ignoring her key legal arguments and making misleading, inaccurate statements in their opinion—all of which caused her emotional distress and harmed her reputation to the point she is "essentially unemployable" in her field.  (ECF 1, at 11-13.)  As a remedy, the complaint seeks an order compelling the Justices to issue a revised opinion "because it is the right thing to do."  (ECF 1, at 16.)

On February 18, 2022, the defendants filed a motion to dismiss her complaint (ECF 5) in which they argue this lawsuit is nearly identical to *Harsay 1* and must be dismissed for the same reasons.  (ECF 6, at 1.)  That motion is currently pending before the assigned district judge. Meanwhile, Harsay filed the current motion to amend her complaint, in which she purportedly seeks to correct deficiencies noted in defendants' memorandum in support of their motion to dismiss (ECF 6) that "might prevent the Court from considering the merits of this case."  (ECF 17, at 1.)  Harsay identified these deficiencies as "a need to state an appropriate statute under which this action is brought, and a need to articulate better the need for a remedy and the particular remedy sought."  (*Id.*)

Harsay's proposed amended complaint still contends that the defendants violated her rights to equal protection and substantive due process under the Fourteenth Amendment's Equal Protection Clause and Due Process Clause.  It also seeks to add the Kansas Supreme Court as a defendant and requests both "[d]eclaratory and injunctive relief . . . under the Declaratory Judgment Act, U.S.C. §§ 2201, 2202, and either declaratory or injunctive relief . . . under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983."  (ECF 17-1, at 2; *see also id.* at 13, 15-16.) Harsay's proposed amended complaint recognizes "that injunctive relief that would force a revised opinion would be very inappropriate" and seeks a declaratory remedy, "in addition to, or instead of," injunctive relief.  (*Id.* at 15-16; ECF 17, at 3.)

## II.     LEGAL STANDARDS

### A.  Amendment Under Rule 15

Once a responsive pleading has been filed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given when justice requires.  FED. R. CIV. P. 15(a)(2).  The rule's purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006)).  The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).  A court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim.  *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).  Whether to grant a motion to amend is within the

court's sound discretion. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

### B. Dismissal Under Rule 12(b)(6)

To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief. *Id.* Dismissal of a pro se plaintiff's complaint for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to give [plaintiff] an opportunity to amend." *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001). The court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Because Harsay is proceeding pro se, the court construes her pleadings liberally and holds them "to a less stringent standard than those drafted by attorneys." *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006). In doing so, the court does not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The plaintiff still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

### III.   ANALYSIS

As explained below, Harsay's proposed amended complaint suffers from the same deficiencies as both her dismissed complaint in *Harsay 1* and her original complaint in this case.

Although Harsay insists her proposed amended complaint "addressed a serious and harmful factual error" in this court's report and recommendation to dismiss her claims in the previous case (ECF 19, at 2 (citing ECF 17-1, at 7)), Harsay acknowledges that her proposed amended complaint merely sets forth the "key facts more explicitly" (and assumes this court "missed" the key facts in the previous case because Harsay "simply cited page numbers from an attached exhibit").  (*Id.*) But the problem with Harsay's prior complaints is not that the court "missed" key facts.  It didn't. The problem is that the prior complaints failed to state a claim upon which relief can be granted, and the proposed amended complaint does not fix those issues.  Thus, for essentially the same reasons stated in this court's report and recommendation in *Harsay 1* (which are incorporated herein by reference), the court recommends that Harsay's motion to amend her complaint be denied because her proposed amendment would be futile.

First, Harsay's proposed amended complaint still does not and cannot overcome defendants' Eleventh Amendment sovereign immunity.  The Eleventh Amendment prevents Harsay from suing a state court or judicial department in federal court.  *See Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785–86 (1991); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 70–71 (1989) (holding that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Harper v. Office of Att'y Regul.*, No. 14-CV-02289, 2014 WL 5801173, at *2 (D. Colo. Nov. 7, 2014) (finding Eleventh Amendment bars claims against the Colorado Supreme Court, Office of the Presiding Disciplinary Judge, and Office of Attorney Regulation Counsel).  Further, in suits for damages, neither a state nor its officials acting in an official capacity are "persons" under § 1983.  *See Ross v. Bd. of Regents*, 599 F.3d 1114, 1117 (10th Cir. 2010).

Harsay asserts that the Kansas Supreme Court "is actually the most proper defendant in this case" but for the problem that it does not fall under the definition of "person" under §1983. (ECF 17, at 2.)  But Harsay's proposed amendment is futile not because the Kansas Supreme Court is not a "person" as used in the statute, but because the Eleventh Amendment "provides absolute immunity from suit in federal courts for states and their agencies" absent an "unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994).  Harsay essentially recognizes this but states that she hopes defendants will waive immunity.  (ECF 17-1, at 5.)  But defendants have not done so.

Thus, a judge's immunity from civil liability is overcome in only two sets of circumstances: (1) "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" or (2) judicial actions "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  The allegations in the proposed amended complaint establish that the actions of which Harsay complains relate to the Justices' roles as presiding judges in Harsay's appeal and were not actions taken in the complete absence of all jurisdiction.  Harsay therefore has not pled around Eleventh Amendment immunity or come within any exception to its jurisdictional bar.  Therefore, her proposed amended pleading does not rectify the fact that her claims against defendants should be dismissed for lack of subject matter jurisdiction as barred by Eleventh Amendment immunity.

Second, Harsay's proposed amended complaint still seeks injunctive relief for acts or omissions that the Justices took in their judicial capacity.  But this relief is unavailable under 42 U.S.C. § 1983.  *Ysais v. New Mexico*, 373 F. App'x 863, 866 (10th Cir. 2010) (stating that judicial officers are generally "explicitly immunized not only against damages but also against suits for injunctive relief under 42 U.S.C. § 1983"); 42 U.S.C. § 1983 (stating that "in any action brought

against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable").  Harsay's proposed amended complaint does not allege that a declaratory decree was violated or that declaratory relief was unavailable.  Her claim for injunctive relief is therefore barred by the statute's plain language.

Harsay acknowledges that "injunctive relief that would force a revised opinion would be very inappropriate" (ECF 17-1, at 16), but she nevertheless proceeds to seek the same type of corrective action (i.e., injunctive relief) with respect to defendants' ruling.  *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009) ("[T]his court defines injunctive relief as all equitable decrees compelling obedience under the threat of contempt." (quotation omitted)).  Harsay again asks that defendants take corrective action:

> I recognize that injunctive relief that would force a revised opinion would be very inappropriate, regardless of whether or not it is legally possible.  However, requesting that the Defendants publish a corrective statement, and/or cite a declaratory judgment from this case whenever my KJRA case is cited, seems reasonable and proper.  Even if injunctive relief is not possible or deemed as not proper, I can ask that the Defendants take corrective action, regardless of the outcome of the present case, because it is the right thing to do.

(ECF 17-1, at 16.)  As explained in this court's report and recommendation in *Harsay 1*, such relief is not available.  (ECF 4 in *Harsay 1* (citing, e.g., *Rahimi v. Sweat*, 748 F. App'x 849, 850-53 (10th Cir. 2018) (affirming summary judgment in a § 1983 case where the pro se plaintiff sought an order requiring the defendant state court judge to take action after allegedly ignoring plaintiff's case and allowing trespass on plaintiff's property).)

Third, Harsay requests that this court issue a declaration that defendants' "inaccurate, misleading factual statements, as well as the omission of uncontested facts in [Harsay's] favor, have caused, and continue to cause, severe harm to [Harsay], in violation of [her] constitutional

rights" and a declaration of "the existence of [Harsay's] key legal arguments." (ECF 17-1, at 15-16.)   But this does not seek a mere declaration of the parties' rights.   In substance, Harsay essentially seeks a declaratory judgment that would have the practical effect of overturning the state court's decision.   This court's report and recommendation in *Harsay 1* explained that this court does not have the authority to issue an order directing state judicial officers in the performance of their duties.   (*See* ECF 4 in *Harsay 1*.)

In sum, Harsay's proposed amendment fails to state a claim upon which relief can be granted for essentially the same reasons stated in the court's report and recommendation in *Harsay 1*.   The court therefore recommends that the presiding district judge deny her motion to amend because the proposed amendment would be futile.

\* \* \* \* \*

Pursuant to 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b)(2), and D. KAN. RULE 72.1.4(b), plaintiff may file written objections to this report and recommendation within fourteen days after being served with a copy.   If plaintiff fails to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court.   *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE RECOMMENDED** that plaintiff Edina Harsay's Motion For Leave to File a First Amended Complaint (ECF 17) be denied for the reasons set forth above.

**IT IS FURTHER ORDERED** that the clerk's office mail a copy of this Order to Harsay via regular mail and certified mail, return receipt requested.

11

**IT IS SO ORDERED.**

Dated May 31, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge